In the

# United States Court of Appeals
## For the Seventh Circuit

No. 19-3215

MARY NASELLO, *et al.*,

*Plaintiffs-Appellants*,

*v.*

THERESA A. EAGLESON, Director of the Illinois Department of Healthcare and Family Services, and GRACE B. HOU, Director of the Illinois Department of Human Services,

*Defendants-Appellees*.

Appeal from the United States District Court for the Northern District of Illinois, Eastern Division.
No. 18 C 7597 — **Robert W. Gettleman**, *Judge*.

ARGUED SEPTEMBER 24, 2020 — DECIDED OCTOBER 6, 2020

Before EASTERBROOK, MANION, and KANNE, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. Plaintiffs have been classified as "medically needy" for the purpose of the Medicaid program. Most people eligible for Medicaid benefits are "categorically needy" because their income falls below a threshold of eligibility. People with higher income but steep medical expenses are "medically needy" once they spend enough

of their own income and assets to qualify for the program's aid. 42 U.S.C. §1396a(a)(10); *Winter v. Miller*, 676 F.2d 276, 277 (7th Cir. 1982) (discussing the nomenclature). The dispute at hand concerns how much these plaintiffs must spend—or, equivalently, how much of their current income and assets a state deems available for medical purposes. The higher those numbers, the less Medicaid pays.

Plaintiffs contend that medical expenses they incurred before being classified as "medically needy" should be treated as money spent on medical care, whether or not those bills have been paid. Doing this would increase the state's payments for their ongoing care. But although Illinois deems all of the plaintiffs "medically needy" and eligible for public contributions toward their medical expenses, it does not treat plaintiffs' past or outstanding bills as equivalent to their current medical outlays. They asked the district court to direct Illinois to pay more toward their care. But the judge dismissed the suit on the pleadings. 2019 U.S. Dist. LEXIS 174318 (N.D. Ill. Oct. 8, 2019).

Section 1396a(r)(1)(A) of Title 42 supplies the complaint's lead theory. It reads:

> [When a state calculates medically needy persons' income] … there shall be taken into account amounts for incurred expenses for medical or remedial care that are not subject to payment by a third party, including—(i) medicare and other health insurance premiums, deductibles, or coinsurance, and (ii) necessary medical or remedial care recognized under State law but not covered under the State plan under this subchapter, subject to reasonable limits the State may establish on the amount of these expenses.

Plaintiffs contend that amounts for which they are legally liable for care in earlier years count toward this total but that Illinois has not given them required credit and is thus not

following this part of the statute and its implementing regulations.

The threshold problem, as the district court recognized, is that Medicaid is a cooperative program through which the federal government reimburses certain expenses of states that promise to abide by the program's rules. Medicaid does not establish anyone's entitlement to receive medical care (or particular payments); it requires only compliance with the terms of the bargain between the state and federal governments. Congress could make those terms enforceable in suits by potential beneficiaries such as plaintiffs, but it has not done so. Instead it has created a system of administrative remedies. Plaintiffs have bypassed those, and the district judge held that, because the statute does not create a private right of action to enforce §1396a(r)(1), they do not have a judicial remedy.

Some older decisions, beginning with *Maine v. Thiboutot*, 448 U.S. 1 (1980), use 42 U.S.C. §1983 as the source of a private remedy for the beneficiaries of federally funded state programs such as Medicare. As far as we can tell, however, the Supreme Court has not added to the list of enforceable provisions since *Wilder v. Virginia Hospital Association*, 496 U.S. 498 (1990). In the three decades since *Wilder* it has repeatedly declined to create private rights of action under statutes that set conditions on federal funding of state programs. For a few of those decisions see *Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320 (2015) (Medicaid providers lack a private right of action to enforce the terms of §1396a(a)(30)(A)); *Astra USA, Inc. v. Santa Clara County*, 563 U.S. 110 (2011) (private beneficiaries of a state-federal contract, whose terms are prescribed by statute, can't sue to en-

force those terms); *Gonzaga University v. Doe*, 536 U.S. 273 (2002) (Family Educational Rights and Privacy Act, another cooperative state-federal program, cannot be enforced through suits under §1983).

Plaintiffs have not cited, and we did not find, any appellate decision holding that district judges may enforce §1396a(r)(1)(A) in private suits. *Armstrong* and its immediate predecessors do not permit a court of appeals to enlarge the list of implied rights of action when the statute sets conditions on states' participation in a program, rather than creating direct private rights. Creating new rights of action is a legislative rather than a judicial task. This remits beneficiaries to the administrative process—and if that fails they could ask the responsible federal officials to disapprove a state's plan or withhold reimbursement.

Section 1396a(a)(8) supplies plaintiffs' fallback argument. This statute provides that a state's plan must

> provide that all individuals wishing to make application for medical assistance under the plan shall have opportunity to do so, and that such assistance shall be furnished with reasonable promptness to all eligible individuals[.]

Several courts of appeals have held that this requirement can be enforced in private suits. *Romano v. Greenstein*, 721 F.3d 373, 377–79 (5th Cir. 2013); *Doe v. Kidd*, 501 F.3d 348, 355–57 (4th Cir. 2007); *Sabree v. Richman*, 367 F.3d 180, 189–93 (3d Cir. 2004); *Bryson v. Shumway*, 308 F.3d 79, 88–89 (1st Cir. 2002); *Doe v. Chiles*, 136 F.3d 709, 715–19 (11th Cir. 1998).

Our opinion in *Bertrand v. Maram*, 495 F.3d 452 (7th Cir. 2007), expresses skepticism about this line of decisions, which is hard to reconcile with the Supreme Court's post-*Wilder* doctrine—and multiple decisions since 2007 (such as

*Armstrong* and *Astra USA*) make it even harder to imply a private right of action. But to avoid creating a conflict among the circuits *Bertrand* assumed for the sake of argument that such a private right exists and resolved the case for defendants on the merits. (This is permissible because the existence of a private right of action is not a jurisdictional requirement.) We take the same path, without suggesting that we would follow the other circuits if push came to shove.

The district court pointed out the insuperable problem that plaintiffs face in trying to frame a claim under §1396a(a)(8): they are receiving benefits. Their grievance concerns not the *time* at which these ongoing benefits are paid but the *amount* of those benefits. Many parts of the Medicaid Act (including §1396a(r)(1)(A)) affect the amount of benefits, but §1396a(a)(8) is not among them. Plaintiffs rejoin that the extra sums to which they claim entitlement aren't being paid at all and thus necessarily aren't being paid "with reasonable promptness". That's word play. It would not be appropriate for a federal court to turn a statute about the timing of benefits into a statute about the level of benefits. Section 1396a(r)(1)(A) cannot be enforced through the back door in the name of §1396a(a)(8).

Plaintiffs have one more line of argument. They maintain that they are disabled (which cannot be doubted; all of them need full-time care at skilled nursing facilities) and that the state is discriminating against them on account of that disability. They rely on the Americans with Disabilities Act, 42 U.S.C. §12131–34, and the Rehabilitation Act, 29 U.S.C. §794. Yet how is Illinois discriminating *against* them on account of disabilities? It is their disabilities that have made them "medically needy" and qualified them for Medicaid benefits.

That the benefits are not as high as they want is not a form of discrimination.

Plaintiffs receive more governmental aid than non-disabled persons. The ADA and Rehabilitation Act may require some accommodations in the implementation of the Medicaid program, but we concluded in *Vaughn v. Walthall*, 968 F.3d 814 (7th Cir. 2020), that a state need not depart from the terms of that program—or draw on funds allocated to other programs—in order to provide those accommodations. Plaintiffs' complaint does not identify any accommodation that would be required by the ADA or Rehabilitation Act yet comport with the terms of the Medicaid Act.

According to plaintiffs, the district court should have allowed them to amend their complaint to include allegations that would have established a plausible claim. Yet their brief does not tell us what a new complaint could allege. The entirety of their argument is:

> Plaintiffs specifically requested leave to amend their complaint in the event that the Court found pleading deficiencies. The District Court did not address Plaintiffs' request to amend and did not find that amendment would be futile.

That bare-bones assertion does not come close to establishing that the district court was required to accept and adjudicate a new complaint.

In the district court they proposed to amend to add allegations bolstering their assertion that each of them is disabled. That would have been pointless, because the district judge assumed that issue in their favor but ruled that their disabilities had not been held against them. So is there anything that plaintiffs could have added to show a violation of these statutes? Elsewhere in their appellate briefs plaintiffs

say that disabled persons are entitled to accommodations that give them more time to fill out forms or satisfy other requirements of the program. But they have not been penalized because of bureaucratic hurdles that bear more heavily on the disabled. Their problem is substantive: the state does not give them credit for outstanding medical bills. The district judge resolved the claim that plaintiffs made. If they have more to say, they should have told us what it is. See, e.g., *Operating Engineers Pension Trust v. Kohl's Corp.*, 895 F.3d 933, 942 (7th Cir. 2018).

AFFIRMED